IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MELISSA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:24-cv-477 (LMB/IDD) |
| ) | |
| NELSON SMITH, in his official capacity as ) | |
| Commissioner of the Virginia Department of ) | |
| Behavioral Health and Developmental ) | |
| Services, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

On March 26, 2024, plaintiff Melissa Brown ("plaintiff" or "Brown") filed an as-applied challenge to Va. Code § 37.2-416.1, alleging that the statute violates the Equal Protection, Due Process, and Privileges or Immunities Clauses of the Fourteenth Amendment to the Constitution by disqualifying her for a substance-abuse counselor position in a state-licensed facility because of her two-decades-old conviction for robbery. [Dkt. No. 1] ("Compl."). On April 19, 2024, defendant Nelson Smith, in his official capacity as Commissioner of the Virginia Department of Behavioral Health and Developmental Services ("defendant" or "Smith"), filed a Motion to Dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [Dkt. No. 11] ("Motion to Dismiss"). The motion is fully briefed and oral argument has been held. For the reasons that follow, defendant's Motion to Dismiss will be granted in part and denied in part.

I. BACKGROUND

A. **Plaintiff Melissa Brown**

Melissa Brown is a 50-year-old grandmother, currently working as the vice-president of marketing and operations at a state-licensed addiction treatment facility in Fredericksburg,

Virginia. Compl. at ¶¶ 14-15. After a turbulent childhood, Brown became addicted to drugs in her twenties and began committing crimes to buy drugs. In 1998, she stole $160 in goods from a Walmart. For that, she was convicted of shoplifting and sentenced to five years' probation. In 2001, when Brown was 27 years old, she stole a woman's pocketbook in a grocery store parking lot and used the credit cards that were in the pocketbook. She was arrested and pled guilty to robbery, larceny, and possessing a controlled substance. Brown was sentenced to ten years' imprisonment[1] and served more than eight years in state prison. Compl. at ¶¶ 16-21.

Since being convicted in 2002, Brown has gotten clean and has been sober for over twenty-two years; she has not been charged with, or convicted of, any other crimes since 2002. Compl. at ¶¶ 22-27. While in prison, she began her college-level studies in psychology and helped other inmates study for their GEDs. After her release in 2010, she got married, was reunited with her children, and completed her bachelor's degree in psychology, cum laude, from the University of Mary Washington. Brown has undertaken more than 200 hours in addiction-recovery coursework, performed 2,000 hours of supervised substance-abuse counseling practice, and applied for, and received, a Certified Substance Abuse Counselor credential from the Virginia Board of Counseling, which granted the certification based on an individualized assessment of her character and fitness. That credential has been renewed annually. Compl. at ¶¶ 25-26, 28-34.

In 2014, Brown was hired as a substance-abuse counselor at a state-licensed treatment facility in Fredericksburg, Virginia. Her employer knew about her criminal history. She worked

---

[1] Brown was sentenced to five years' imprisonment for the robbery offense, plus five years for violating her probation for the earlier shoplifting offense. Compl. at ¶ 21.

2

there as a substance-abuse counselor for four years when, in 2018, Brown was promoted to lead counselor, helping to supervise the facility's clinical work. Compl. at ¶¶ 35-38.

Later in 2018, Brown's employer was acquired by another rehabilitation facility; the new ownership determined that Brown could not work in any "direct-care" position at any licensed treatment facility in Virginia because of Va. Code § 37.2-416.1—the Virginia barrier law at issue in this litigation. Under Virginia law, there are 176 "barrier crimes" applicable to the hiring and regulation of substance-abuse counselors and other direct-care positions supervised by the Virginia Department of Behavioral Health and Developmental Services (the "Department"). With defined exceptions, the barrier law provides that conviction for any one of the listed crimes results in a lifetime ban on that type of employment. The list includes robbery as one such barrier crime. Compl. at ¶¶ 60-67 (citing the barrier law, Va. Code § 37.2-416.1, and the list of barrier crimes, Va. Code § 19.2-392.02); see also Compl. at ¶¶ 39-42.

Thereafter, Brown's employer transitioned her to a marketing position—a non-direct care role to which the barrier law does not apply. Outside of her working hours, Brown volunteers as a substance-abuse counselor at a nonprofit treatment center in Virginia, one that is not subject to Department licensure and not subject to the barrier law. Brown's employer has indicated that it would transfer Brown to a direct-care position, working as both a counselor and supervisor of other counselors, if it were not subject to the barrier law. Compl. at ¶¶ 43-50.

According to the Complaint, between 2018 and 2021, the barrier law blocked approximately 1,100 people from working in any position regulated by the Department, not just as substance abuse counselors. Compl. at ¶ 68. It also points out that, in 2016, the Virginia Department of Health declared opioid addiction a public-health emergency, and, as such, there is a growing need for substance-abuse counselors in Virginia. Compl. at ¶¶ 69-70. The

Department has acknowledged that need, explaining that one of its "challenges" is finding "qualified applicants to help meet the growing behavioral health/developmental services workforce needs." Compl. at ¶ 112. The Complaint stresses that because many people with the "invaluable" "first-hand experience" of overcoming addiction will have been convicted of barrier offenses, the barrier law makes it impossible for them to share their invaluable experience as counselors. Compl. at ¶ 113. Brown contends that by excluding qualified counselors like herself, the barrier law worsens substance abuse in Virginia. Compl. at ¶ 75.

B. **Statutory Background**

The Virginia Department of Behavioral Health and Developmental Services regulates the treatment and care of persons coping with mental illness, substance abuse, and developmental disabilities, 12 Va. Admin. Code 35, and the operation of state facilities that provide such treatment and care for those persons, Va. Code §§ 37.2-700, 37.2-403, 37.2-405.

Under this statutory regime, it is unlawful for a statutorily-defined "provider"[2] to establish, conduct, maintain, or operate any statutorily-defined "service"—or to admit, place, treat, maintain, house, or otherwise keep any person—without a license from the Commissioner. Va. Code §§ 37.2-405(A), (C). Similarly, it is unlawful for any person to maintain or operate a statutorily-defined "service" outside of the direct supervision of a licensed "provider." Va. Code § 37.2-413. A licensed provider is subject to ongoing statutory and regulatory requirements, including licensure renewals, inspections, human-rights reviews, and background checks. See Va. Code §§ 37.2-410, -411, -412, -416, -416.1.

---

[2] Examples of "providers" include "a hospital as defined in Va. Code § 32.1-123, community services board, behavioral health authority, private provider, and any other similar or related person, entity, or organization." Va. Code § 37.2-403.

4

Virginia law requires Department-licensed providers to conduct background checks on individuals working in a "direct care position" and limits service in such roles if the individual has been convicted of a "barrier crime."[3] Va. Code § 37.2-416(B) (substance abuse and mental health services for minors and developmental services for individuals of any age); Va. Code § 37.2-416.1(B) (substance abuse and mental health services for adults). A "direct care position" is one with responsibility for an individual's "treatment, case management, health, safety, development, or well-being" in the provision of substance-abuse, mental-health, or developmental services or one with responsibility for "immediat[e] supervision[]" over such a position. Va. Code §§ 37.2-416(A), -416.1(A).

For Department-licensed providers of substance-abuse, mental-health, and developmental services, there are statutorily-defined "barrier crimes" that are disqualifying, included among clause (i), (ii), (iii), or (iv)[4] offenses. See Va. Code. §§ 37.2-416(B)(1)-(4), -416.1(B)(1)-(2). Robbery is an offense under clause (i) of the "barrier crime" definition,[5] and it is a completely-disqualifying offense. Va. Code § 19.2-392.02(A).

- **clause (i):** robbery; felony violations of certain protective order provisions; aggravated murder; felony homicide, voluntary and involuntary manslaughter;

---

[3] In 1999, the General Assembly extended the background check requirement—which until that time only applied to residential facilities for juveniles—to direct-care positions with Department-licensed providers for adults, in the interest of detecting and addressing the criminal backgrounds of volunteers and employees working with vulnerable populations. See Va. State Crime Comm'n, H. Doc. No. 64: Report on Criminal History Record Checks for Volunteer and Contract Service Providers (1999), https://rga.lis.virginia.gov/Published/1999/HD64/pdf.

[4] Clause (iv) includes felony offenses for possession of a controlled substances, but only if the offense was committed within the five years preceding the date of application or entry into a shared-living arrangement or if the applicant remains on probation or parole or has not paid required court costs for the offense. Va. Code §§ 19.2- 392.02(A), 37.2-416(B)(1)-(4), -416.1(B)(1)-(2).

[5] In Virginia, robbery is a common law felony defined as the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Jay v. Commonwealth, 275 Va. 510, 524 (2008) (cleaned up).

5

shooting, stabbing, cutting, or wounding in commission of a felony or with intent to main, disable, disfigure, or kill; assault or battery by mob; felony gang offenses; terrorism-related offenses; abduction and kidnapping offenses; malicious wounding offenses; maiming through intoxicated vehicular operation; strangulation or suffocation; certain offenses related to firearms and other weapons; poisoning-related offenses; injury of correctional-facility personnel or probation or parole officials by a prisoner, probationer, or parolee; felony hazing; assaults and batteries not subject to exceptions; pointing a laser at a law-enforcement officer, probation or parole officer, correctional officer, or other correctional personnel; disarming a law-enforcement officer, correctional officer, or other correctional personnel; carjacking; extortion; threating the Governor or the Governor's immediate family; felony stalking; rape and other sex offenses; prostitution-related offenses not subject to the above-referenced exceptions; obscenity-related offenses; offenses relating to bombing, burning, or destroying structures or other property or things; failing to secure medical attention for an injured child; abuse and neglect of vulnerable adults or children; felony offenses related to riot or unlawful assembly; insurrection-related offenses; burning crosses or other objects, using swastikas, or displaying nooses to intimidate; offenses related to paramilitary activity; delivering drugs, firearms, or explosives to prisoners or other committed persons; offenses related to escape from confinement and other felonies by prisoners; offenses within secure juvenile facilities or detention homes; treason; and offenses related to the overthrow of government;

- **clause (ii):** offenses relating to burglary and breaking and entering not subject to the above-referenced exceptions; and
- **clause (iii):** offenses relating to the manufacture, sale, gift, distribution, or possession of certain quantities of mixtures or substances containing controlled substances.

Certain barrier crimes are not automatically disqualifying, in that they have built-in statutory exceptions. Va. Code §§ 37.2-416(C), -416.1(C), (D), (F). Barrier crimes with exceptions include reckless endangerment by throwing objects from above one story, misdemeanor hazing or reckless handling of firearms, misdemeanor simple assault and battery, first-offense misdemeanor assault and battery against a family or household member, threat of death or bodily injury, burglary, breaking and entering a dwelling to commit another misdemeanor, possession of burglarious tools, misdemeanor brandishing of a firearm or other weapon, misdemeanor prostitution, misdemeanor solicitation of prostitution, and most of the "clause (iii)" barrier crimes, which are predominantly concerned with controlled substances. Va.

6

Code § 37.2- 416.1(C). Licensed providers of adult substance-abuse or mental-health services may hire or contract individuals convicted of these barrier crimes if a screening assessment determines that the applicant's criminal behavior was substantially related to substance abuse or a mental illness and that the applicant has been successfully rehabilitated and is not a risk to individuals receiving services from the provider. Va. Code § 37.2- 416.1(C) (screening of offenses provision).

Additionally, there are two allowances for hiring applicants who might otherwise be disqualified by a barrier crime. Without requiring a background check or disqualification, Virginia law allows a Department-licensed provider to (1) "promot[e] from one adult substance abuse or adult mental health [direct care] position to another such position within the same licensee" or (2) "new[ly] employ[]" a person "in an adult substance abuse or adult mental health [direct care] treatment position in another office or program licensed" if that person was "employed prior to July 1, 1999, in a licensed program" and "had no convictions in the five years prior to the application date for employment." Va. Code § 37.2-416.1(A) (referred to as "the grandfather provision").

## II. DISCUSSION

### A. <u>Standard of Review</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a claim if the "plaintiff's allegations fail to state a claim upon which relief can be granted." <u>Abdelhamid v. Sec'y of the Navy</u>, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting <u>Adams v. NaphCare, Inc.</u>, 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). To survive a Rule 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Although a court must accept all well-pleaded allegations as true and view a complaint

in the light most favorable to the plaintiff, it need not accept "unwarranted inferences, unreasonable conclusions, or arguments." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (internal citation omitted).

### B. Equal Protection Clause Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State . . . shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal-protection claim, a complaint must allege facts making a plausible claim that: 1) the state has treated the plaintiff "differently from others who are similarly situated to" her; and 2) the state's "classification" of the plaintiff does not satisfy "the appropriate level of constitutional scrutiny." Doe v. Settle, 24 F.4th 932, 939 (4th Cir. 2022). Here, the parties agree that the appropriate level of constitutional scrutiny is rational basis review because there is no fundamental right or suspect classification at issue to trigger heightened scrutiny; thus, the challenged law must be "rationally related to a legitimate state interest," City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).

In his Motion to Dismiss, defendant first argues that the Complaint does not allege sufficient facts showing that the barrier law treats plaintiff differently from others who are similarly situated to her. [Dkt. No. 12] at 14; see also id. at 15 ("Brown does not adequately plead similar situation but, instead, relies on conclusory assertions that '[i]n all relevant respects' she is 'similarly situated' to vaguely-characterized classes of 'substance-abuse counselors' and 'other kinds of counselors' but Virginia law 'irrationally distinguishes' them.").

In opposition, plaintiff argues that the Complaint identifies at least five sets of comparators to whom she is similarly situated:

1. Aspiring substance-abuse counselors without barrier convictions. Compl. at ¶ 136.

    2. Aspiring substance-abuse counselors who are convicted of barrier crimes after already being employed as substance-abuse counselors at licensed treatment facilities. Compl. at ¶ 137.
    3. Aspiring substance-abuse counselors with barrier crime convictions but who are exempt from the barrier law because they were already employed in direct-care positions when the law went into effect in 1999. Compl. at ¶ 138.
    4. Substance-abuse counselors who work outside of licensed treatment facilities who are not categorically banned by the barrier law. Compl. at ¶ 138.
    5. People who provide counseling on topics other than substance abuse outside of licensed treatment facilities, like independent professionals counselors, psychologists, or marriage and family therapists, who are not categorically banned by the barrier law. Compl. at ¶¶ 87, 140.

[Dkt. No. 15] at 33-34 (cleaned up).[6]

As plaintiff correctly argues, these comparators need not be like Brown in every possible respect; rather, she must be similarly situated to them in ways relevant to "the goal of" the barrier law. See Alive Church of the Nazarene, Inc. v. Prince William Cnty., 59 F.4th 92, 113 (4th Cir. 2023). At a minimum, categories 1 and 3, supra, constitute similar groupings sufficient to state a claim that there are plausible impermissible distinctions being made between plaintiff and those other categories of persons who would otherwise be eligible to serve in a direct-care role.

Having found that the barrier law plausibly treats plaintiff differently from those similarly situated to her, the Court must then apply the appropriate level of constitutional scrutiny: rational-basis review. This test represents a powerful presumption that the state law is valid. Lyng v. Auto. Workers, 485 U.S. 360, 370 (1988). Although the showing required to overturn that presumption is steep, Doe, 24 F.4th at 943, the standard is far from "toothless," Craigmiles

---

[6] Absent from this list of comparators are substance-abuse counselors who have equally serious convictions that happen to not be barrier convictions or who otherwise lack barrier convictions. Defendant argues that the Complaint fails to identify what non-barrier crime is "similar enough" to robbery to be a proper comparator. [Dkt. No. 12] at 15.

9

v. Giles, 312 F.3d 220, 229 (6th Cir. 2002). A challenger must show there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320 (1993). The state need not make any showing; no evidence of any kind is required; reasonable speculation is enough. Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993). As for the justification, any conceivable reason will do. It does not matter what actually motivated the classification. Id. at 315.

Nor is there any place in rational-basis review to question the wisdom or logic of a state's legislation; rough line-drawing, even "illogical" or "unscientific" line drawing, is often a necessary aspect of governing. Heller, 509 U.S. at 321 (citing Metropolis Theater Co. v. City of Chicago, 228 U.S. 61, 69-70 (1913)). And unlike higher levels of scrutiny, there is no tailoring requirement under rational-basis review. Id. All that is needed is an imperfect fit between a plausible reason and some legitimate end. See also Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008); Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973).

Defendant argues that a rational basis supports the challenged classification of robbery as a barrier crime. Specifically, defendant offers three interrelated bases on which the Court may find a plausible reason tied to some legitimate end. First, a categorical bar on employment in a position as sensitive as a direct-care substance-abuse counselor on the basis of a criminal conviction for robbery, a serious felony, is plainly rational and constitutional. [Dkt. No. 12] at 17. Second, state laws disqualifying convicted felons from certain types of employment deemed "important to the public interest" have a long history, and "robbery has long been regarded amongst the most heinous felonies." Id. at 18 (cleaned up). And third, because robbery is a felony against "person and property," and may itself be associated with substance abuse disorders, "Virginia rationally views such a criminal history as having a negative relation to the

10

objectives of, and sensitivities inherent in, the provision of planned, individualized interventions through direct care to vulnerable individuals suffering with substance abuse." Id. at 18. Put differently, defendant argues that there is nothing irrational in the observation that—in the interests of public health, safety, and welfare—a state may refer to a criminal conviction in defining qualifications for one's fitness and character to enter into an occupation treating health conditions. In such cases, "it is not for the courts to substitute their judgment for that of the state legislature." Id. at 18 (cleaned up).

In opposition, plaintiff attacks the irrationality of the barrier law on four bases: 1) the law ignores Brown's circumstances; 2) the law's prohibition turns on an irrelevant crime; 3) the law's prohibition is uncommonly harsh; and 4) the law is "riddled with inexplicable exceptions." [Dkt. No. 15] at 14-23. Each argument will be addressed in turn.

Brown first argues that the barrier law disregards consideration of the nature and severity of the crime for which she was convicted, the time elapsed since her conviction, and the degree of her rehabilitation over the past twenty-two years. In erecting the barrier law, Brown contends that the Commonwealth is permanently banning individuals who have achieved the chief aim of punishment, namely, complete rehabilitation, without any consideration of an individual's circumstances since conviction for certain barrier crimes. Although Brown was convicted for robbery when she was addicted to drugs, she has been sober and not been convicted of any crimes for more than two decades. Compl. at ¶¶ 22-24, 27. She helped tutor other inmates while she was incarcerated, and has earned a bachelor's degree in psychology with honors. Compl. at ¶¶ 25, 29-30. She has been certified as, and continues to be, fit for substance-abuse counseling by the Commonwealth, notwithstanding her decades-old criminal record. Compl. at ¶¶ 31-34. She worked as a well-regarded substance-abuse counselor for years and was promoted to lead

counselor. Compl. at ¶¶ 35-38, 48, 128. She continues to devote herself to helping people battling addiction, both in her working hours (as vice-president of marketing and operations at a treatment facility) and in her spare time (as a volunteer counselor at a nonprofit not subject to the barrier law), Compl. at ¶¶ 44-47; however, none of these accomplishments can be considered by the state licensure authorities because the barrier law prohibits individualized consideration of her rehabilitation given her robbery conviction. [Dkt. No. 15] at 22-23.

Because older convictions are less probative of a future likelihood of recidivism, Brown contends that the barrier law irrationally treats her twenty-two-year-old robbery conviction as dispositive of her future behavior—forever. See [Dkt. No. 15] at 23 (citing Fields v. Dep't of Early Learning, 434 P.3d 999, 1005 (Wash. 2019) ("Because [her] sole disqualifying conviction occurred long ago . . . it is highly likely that her permanent disqualification is erroneously arbitrary."). Brown supports her argument by pointing to Fields, in which the Washington Supreme Court considered a case with similar facts. Christal Fields was convicted of attempted robbery when she "attempted to snatch a purse to help pay for her drug habit." 434 P.3d at 1001. Twenty-five years later, Fields, who had "turned her life around," was disqualified from working in a childcare facility because of a state law that codified "50 types of permanently disqualifying convictions," one of which was attempted robbery. Id. at 1001-03. The Washington Supreme Court explained that Fields's "sole disqualifying conviction occurred long ago under circumstances that no longer exist," id., and that although she was banned from childcare facilities, the law did not ban her from providing foster care, a role also "responsible for the protection, care, supervision, and nurturing of the child." Id. at 1005-06 (cleaned up). Given this

inconsistency, the court held that the state law lacked a "rational basis for doing so" in "the particular circumstances presented by Fields's case." Id. at 1004.[7]

Brown also cites to Barletta v. Rilling, in which a federal district court invalidated a state licensure law relating to the qualifications for persons trading precious metals partly because the state law imposed a permanent ban without accounting for the "nature and severity of the crime, the nature and circumstances of [a person's] involvement in the crime, the time elapsed since conviction, and the degree of the [person's] rehabilitation." 973 F. Supp. 2d 132, 139 (D. Conn. 2013). For example, the Court explained that the classification was overbroad because it failed to distinguish among felons in terms of when they were convicted and how severely they were sentenced, and because the ban on felons is insufficiently related to the purpose of the statute, namely, whether there is a meaningful relationship between the absolute bar on felons from holding a precious metals license and the legitimate state interest of protecting the public from unscrupulous precious metals dealers. Id. at 139.

Plaintiff argues that although Brown was convicted of robbery because she snatched a purse in an attempt to fuel her drug addiction, she did not physically assault the victim and there were no aggravating factors. Compl. at ¶ 20. In short, Brown claims that the lack of case-by-case analysis ensures that there will be no rational relationship between the "sweeping, categorical ban" and Brown's occupational fitness.

Next, Brown argues that the barrier law irrationally bans her for committing "a crime with no connection to substance-abuse counseling," because it does not relate to "the objectives of, and sensitivities inherent in, the provision of planned, individualized interventions through

---

[7] As plaintiff acknowledges, the holding in Fields was couched in terms of procedural due process; however, a concurring opinion explained that the analysis would be nearly identical under substantive due process. [Dkt. No. 15] at 11 & n.4 (citing 434 P.3d at 1008-09).

13

direct care to vulnerable individuals suffering with substance abuse." [Dkt. No. 15] at 25 (citing [Dkt. No. 12] at 18). Contrary to defendant's arguments, Brown claims that there is no reasonable inference that she would rob or attack the people she has dedicated her life to helping, as demonstrated by the aforementioned rehabilitation. Moreover, the barrier law does not categorically prevent Brown from coming into contact with people battling addiction because there is no prohibition on Brown working in a licensed treatment facility. In her marketing and operations role, she works in a licensed facility that is treating those types of patients every day, see Compl. at ¶¶ 14, 44-46; [Dkt. No. 15] at 25-26, and she is also counseling such people as a volunteer in a non-licensed facility.

Brown also argues that the irrationality of the barrier law is demonstrated by two other features of the statute, specifically, the barrier law provides for only a five-year ban for those convicted of drug possession and distribution offenses, Va. Code § 37.2-416.1(B)(1), and provides for individualized screening for those and many other offenses, Va. Code § 37.2-416.1(C). As the Complaint alleges, "the barrier-crime statute irrationally makes the crimes most related to substance abuse counseling, like drug offenses, eligible for individualized screening." Compl. at ¶ 94 (emphasis in original).

The Complaint also alleges that the barrier law treats some serious crimes more leniently than convictions for robbery. For example, someone convicted of burglary—a class three felony—would be eligible to work as a counselor after completing an individualized screening assessment, Va. Code § 37.2-416.1(C); however, Brown's robbery conviction—which, given the conduct involved, would today result in a lesser class six felony conviction, Va. Code § 18.2-58(B)(4)—results in a lifetime ban. Other puzzling distinctions between screenable and non-screenable barrier crimes abound. Reckless endangerment by throwing objects from two stories

14

or higher is screenable; recklessly driving a boat while under the influence is not. Compare Va Code § 37.2-416.1(C) (allowing screening for convictions under § 18.2-51.3), with Va. Code § 37.2-416.1(B)(1) (prohibiting screening for convictions under § 18.2-51.5). Hazing in a fraternity is screenable; hazing in a gang is not. Compare Va. Code § 37.2-416.1(C) (allowing screening for convictions under § 18.2-56), with Va. Code § 37.2-416.1(B)(1) (prohibiting screening for convictions under § 18.2-55.1). Brandishing a firearm in most places is screenable; brandishing a BB gun at school is not. Va. Code § 37.2-416.1(C) (allowing screening only for misdemeanor convictions under § 18.2-282). Threatening a teacher is screenable; threatening the Governor is not. Compare Va. Code § 37.2-416.1(C) (allowing screening for convictions under § 18.2-60), with Va. Code § 37.2-416.1(B)(1) (prohibiting screening for convictions under § 18.2- 60.1).

Third, Brown argues that the prohibition imposed by the barrier law "is uncommonly harsh." [Dkt. No. 15] at 28. She claims that her criminal history would get individualized consideration if she were pursuing licensure in medicine or law, yet the Commonwealth has invoked the "sensitivities" present in substance-abuse counseling to categorically ban her from that work. "So it is at least plausible that a much harsher rule for substance-abuse counselors could be irrational." [Dkt. No. 15] at 29. Moreover, Virginia does not have a barrier law for other types of counselors, such as mental-health counselors, independent professional counselors, psychologists, or marriage and family therapists.

> So if [Brown] wanted to work in a private office helping people have a better relationship with a spouse or overcome a gambling addiction, her criminal history would receive individualized consideration. But because she wants to work in a rehab center helping people have a better relationship with alcohol or overcome an opioid addiction, she is barred from working forever. That makes no sense

15

[Dkt. No. 15] at 30.

Finally, Brown claims that the barrier law is irrational because it is riddled with arbitrary and inexplicable exceptions. [Dkt. No. 15] at 30. To start, "most substance-abuse counselors who worked before the barrier law was passed are grandfathered in, regardless of their criminal history," because the barrier law does not apply to people employed as substance abuse counselors on July 1, 1999. See Va. Code § 37.2-416(B)(1); Va. Code § 37.2-416.1(A). The existence of the grandfather provision demonstrates that if convicted criminals who had been working before July 1999 were capable of essentially rehabilitating themselves so as to qualify then there is no reason why other convicted criminals would not also be capable of doing the same. See Nixon v. Commonwealth, 839 A.2d 277, 289-90 (Pa. 2003) (holding criminal-history ban on working with "the elderly, disabled, and infirm" irrational as applied because of grandfathering clause). Defendant responds that the limited allowances provided for in the barrier law reflect a "gradual approach" adopted by the legislature, which is permissible under rational-basis review. The "General Assembly reasonably withheld the broader rule of disqualification as to certain transitions of existing direct-care employees," taking a "one step at a time" approach and not attempting to "strike at all evils at the same time." See [Dkt. No. 16].

As the Court stated during oral argument, Brown has put forward sufficiently compelling arguments to make out a plausible claim that the Virginia barrier law, as applied to her, may be irrational. Although the Court is also aware of defendant's repeated rejoinder that, under rational basis review, the Court must defer to legislative line-drawing, if rational-basis review is a test with meaning—if it has "teeth"—it must mean something beyond absolute deference to the legislature; otherwise it is not review at all. See Barletta, 973 F. Supp. 2d at 136. Rational basis review "imposes a requirement of some rationality in the nature of the class singled out."

16

Rinaldi v. Yeager, 384 U.S. 305, 308-09 (1966). At bottom, taking all of the factual allegations in the Complaint as true and viewing them in the light most favorable to Brown, the Complaint makes a plausible allegation of the irrationality of the barrier law with respect to Brown's robbery conviction and attendant circumstances. For these reasons, the Court will decline to dismiss plaintiff's equal-protection claim at this time. A more complete record, with the benefit of discovery, will allow the parties to flesh out their arguments at summary judgment.

### C. Due Process Clause Claim

Under the Fourteenth Amendment's Due Process Clause, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. There is no broadly defined fundamental right to work. Prynne v. Settle, 848 F. App'x 93, 104 (4th Cir. 2021). As the Supreme Court has explained, "the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999) (interpreting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)); see also Litmon v. Harris, 768 F.3d 1237, 1242 (9th Cir. 2014) ("[A] restriction on the conduct of a profession will run afoul of substantive due process rights only if it is irrational.") (alteration in original) (quoting In re Crawford, 194 F.3d 954, 961 (9th Cir. 1999)).

Brown's due process claim attacks the rationality of the barrier law with respect to her two-decades-old conviction for robbery. The parties agree that the constitutional analysis under the Due Process Clause is identical to that undertaken in the equal protection context above—rational basis review applies. See [Dkt. No. 12] at 19-20; [Dkt. No. 15] at 11 n.4. Accordingly, as explained above in discussing the Equal Protection Clause analysis, because the Court finds that the Complaint plausibly alleges that the law as-applied to plaintiff has no rational basis, it will decline to dismiss plaintiff's due-process claim. See Guardian Plans, Inc. v. Teague, 870

17

F.2d 123, 125 n.2 (4th Cir. 1989) (addressing "due process and equal protection challenges as one" because the rational-basis standard "is the same").

### D. Privileges or Immunities Clause Claim

Lastly, plaintiff concedes that her claim under the Privileges or Immunities Clause of the Fourteenth Amendment is foreclosed under binding precedent.[8] See [Dkt. No. 15] at 5 n.3. She has included the claim solely for appellate review. Compl. at ¶¶ 155-58. Accordingly, the Court will dismiss this claim.

### III. CONCLUSION

For these reasons, the Court will grant in part and deny in part defendant's Motion to Dismiss, [Dkt. No. 11], by an Order to be issued with this Memorandum Opinion.

Entered this 3rd day of June, 2024.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[8] Some Justices of the Supreme Court have expressed interest in revisiting the Court's interpretation of the Privileges or Immunities Clause. See, e.g., Timbs v. Indiana, 586 U.S. 146, 157 (2019) (Gorsuch, J., concurring); id. at 157-70 (Thomas, J., concurring in the judgment).